IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

E. CLAIBORNE ROBINS COMPANY, INC.,

    **Plaintiff,**

v.                                                  Civil Action No. 3:18cv827

TEVA PHARMACEUTICAL INDUSTRIES
LTD. and TEVA PHARMACEUTICALS
USA, INC.,

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Teva Pharmaceuticals USA Inc. ("Teva USA") and Teva Pharmaceuticals Industries Ltd.'s ("Teva Ltd." and, collectively with Teva USA, "Defendants" or "Teva") Motions to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF Nos. 6, 41.) Plaintiff E. Claiborne Robins Company ("Robins") responded, (ECF No. 11), and both Teva USA and Teva Ltd. replied, (ECF Nos. 17, 44). Teva Ltd. filed an additional Motion to Dismiss brought pursuant to Federal Rule of Procedure 12(b)(2)[2] for lack of personal jurisdiction,[3] (ECF No. 40), to which Robins

---

[1] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] Rule 12(b)(2) allows dismissal for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).

[3] Although Teva Ltd. filed two motions to dismiss, it filed the same document for both and included only one memorandum in support of both motions. (ECF No. 42.) In support of its Rule 12(b)(6) arguments, Teva Ltd. joins Teva USA's Motion to Dismiss because "Teva USA's arguments apply equally to Teva Ltd." (Mem. Supp. Teva Ltd. Mot. Dismiss 4, ECF No. 42.) For this reason, the Court refers only to the Teva USA Motion to Dismiss when addressing arguments pertaining to the Rule 12(b)(6) analysis.

responded, (ECF No. 43), and Teva Ltd. replied, (ECF No. 44). The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[4] For the reasons that follow, the Court will grant both the Teva USA and Teva Ltd. Rule 12(b)(6) Motions to Dismiss. (ECF Nos. 6, 41.) Concomitantly, the Court will deny as moot Teva Ltd.'s Rule 12(b)(2) Motion to Dismiss. (ECF No. 40.) The Court will grant Robins leave to amend the Amended Complaint.

## I. Factual and Procedural Background

### A. Factual Allegations[5]

This breach of contract action arises out of Defendants alleged failure to use Commercially Reasonable Efforts in the marketing and sale of a drug developed by Robins. Robins patented the drug Amrix, a cyclobenzaprine hydrochloride used as a muscle relaxant. In 2007, Anesta AG ("Anesta"), a non-party to this suit, "negotiated to purchase all of Robins's rights and obligations related to Amrix." (Am. Compl. ¶¶ 10, ECF No. 4.)

The sale contract for Amrix (the "Contract") provides that Anesta pay a "Base Purchase Price" while creating an additional form of remittance referred to as "Net Sales Milestone

---

[4] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Robins is a citizen of Virginia, Teva USA is a citizen of Delaware and Pennsylvania, Teva Ltd. is a citizen of Israel, and the Amended Complaint seeks damages exceeding $75,000.

[5] For the purpose of the Rule 12(b)(6) Motions to Dismiss, the Court will accept the well-pleaded factual allegations in Robins's Amended Complaint as true, and draw all reasonable inferences in favor of Robins. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Payments." (*Id.* ¶ 11.) The "Net Sales Milestone Payments" portion of the Contract designates a schedule by which Anesta would make additional payments to Robins for twelve years—until August 28, 2019—upon the occurrence of certain events. (*Id.*) Because a large amount of Robins's earnings from the deal depended on the future sales of Amrix, the Contract provides that Anesta will, at all times, use "'Commercially Reasonable Efforts' with respect to the marketing and sale of Amrix."[6] (*Id.* ¶ 13 (quoting Contract §4.02(c).)) The Contract defines "Commercially Reasonable Efforts" as:

> [W]ith respect to any Person,[7] the efforts and resources that would be used (including the promptness in which such efforts and resources would be applied) by such Person consistent with its normal business practices, which in no event shall be less than the level of efforts and resources standard in the pharmaceutical industry for a company similar in size and scope to such Person, with respect to <u>a product</u> at a similar stage in its development or product life taking into account efficiency, safety, commercial value, the competitiveness of alternative products of third parties that are in the marketplace or under development, and the Patent and other proprietary position of such product.

(*Id.*)

The Contract also includes a choice-of-law provision, which designates New York law as applicable, and a choice-of-venue provision that states, in relevant part: "Each party hereby irrevocably submits to the jurisdiction of, and agrees that any action arising out of this [Contract]

---

[6] The Amended Complaint alleges that the Contract "recognizes that the [b]uyer and its successors may decide to focus marketing dollars and efforts elsewhere, and in such case it may be difficult or impossible to prove how, if at all, such decisions affected sales of Amrix. (Am. Comp. ¶ 13.) Therefore, according to the Amended Complaint, the "[Contract] sets forth a formula to determine how much Robins would be owed automatically if 'at any time' the buyer failed to use Commercially Reasonable Efforts." (*Id.*)

[7] "Person," as used in the Contract, means "any natural person, corporation, general partnership, limited partnership, limited liability company, joint venture, proprietorship, other business organization or entity, trust, union, association, or Governmental or Regulatory Authority." (Am. Comp. Ex.1 "Contract" 6, ECF No. 4-1.)

3

shall be brought in . . . the United States District Court for the Eastern District of Virginia."
(Am. Compl. Ex. 1 "Contract" § 13.11.)

In 2011, Teva Ltd., the parent company of Teva USA, acquired Anesta's parent company.[8] According to Robins, Teva Ltd. then "acquired all of . . . Anesta's rights and obligations related to Amrix." (Am. Compl. ¶ 15.) In 2015, Teva Ltd.'s financial situation dramatically worsened, and the company's stock value fell nearly eighty percent.

As a result of Teva Ltd.'s deteriorating financial condition, the company took "drastic" cost-cutting measures, including "cutting the marketing budget and efforts regarding the sale of Amrix, such that at some point in 2016 or thereafter Teva Ltd. and Teva USA failed to use Commercially Reasonable Efforts with respect to the marketing and sale of Amrix."[9] (*Id.* ¶¶ 23–24.) Robins claims that the subsequent "precipitous drop in gross and net sales of

---

[8] No party disputes the validity of the choice-of-law and choice-of-venue provisions in the Contract, although disagreement exists over whether these Contract terms bind Teva Ltd. Specifically, Robins asserts "upon information and belief" that Defendants are both assignees of the Contract. (Am. Compl. ¶ 17.) Teva Ltd.'s Rule 12(b)(2) Motion to Dismiss contests that assertion, arguing that its purchase of Anesta's parent company does not automatically turn it into a party to the Contract, meaning it has not consented to personal jurisdiction in this venue. Because the Court will dismiss the Amended Complaint based on the Rule 12(b)(6) challenge, the Court assumes without deciding that it may exercise personal jurisdiction over Teva Ltd.

[9] The Amended Complaint lacks relevant details about Teva's marketing efforts that Robins later attempts to introduce in its responses to the Motions to Dismiss. For instance, in its response to the Teva Ltd. Motion to Dismiss, Robins attaches several emails purporting to show Defendants' unresponsiveness to Robins's inquiries about Defendants' marketing strategy with respect to Amrix. However, the Court cannot consider these emails in deciding these Rule 12(b)(6) motions to dismiss, as they fall outside the Amended Complaint and the exhibits attached to it. *See Deutsche Bank v. Buck*, No. 3:17cv833, 2019 WL 1440280, at *3 (E.D. Va. Mar. 29, 2019) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Mylan Labs, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991))); *see also Doe v. Salisbury University*, 123 F. Supp. 3d 748, 757 (D. Md. 2015) ("[C]ourts 'generally do not consider materials other than the complaints and documents incorporated into it when evaluating that complaint under Rule 12(b)(6).'" (quoting *Braun v. Maynard*, 652 F.3d 557, 559 n.1 (4th Cir. 2011))).

Amrix" provides "evidence of [Defendants'] failure" to use Commercially Reasonable Efforts in marketing Amrix, as required by the Contract. (*Id.* ¶ 25.)

B. **Procedural Background**

The seven-page Amended Complaint brings a single breach of contract claim against Teva Ltd. and Teva USA. Teva USA filed the Teva USA Motion to Dismiss. Robins filed its response, and Teva USA replied.

After its deadline to file an answer or responsive pleading, Teva Ltd. filed a Motion for Extension of Time to Respond to the Amended Complaint, (ECF No. 22), which this Court granted, (ECF No. 39). Teva Ltd. then filed its dual Motions to Dismiss, adopting in full the arguments in Teva USA's 12(b)(6) motion to dismiss, and focusing its briefing on its own Rule 12(b)(2) arguments.[10] Robins opposed Teva Ltd.'s motions, and Teva Ltd. replied in a single reply.

## II. Standard of Review: Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are

---

[10] Teva USA did not challenge this Court's exercise of personal jurisdiction over it.

5

not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## III. Analysis

### A. Legal Standard: Breach of Contract under New York Law

"Under New York law, a cause of action for breach of contract requires '(1) the existence of an agreement,[11] (2) adequate performance of the contract by the plaintiff,[12] (3) breach of contract by the defendant, and (4) damages.'" *Benihana of Tokyo, LLC v. Angelo, Gordon & Co.*, 259 F. Supp. 3d 16, 33 (S.D.N.Y. 2017) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 177 (2d Cir. 2004)). "The plaintiff must allege the specific provisions of the contract upon which liability is predicated . . . [and] [i]t is a fundamental principle of contract law that agreements are interpreted in accordance with the parties' intent[.]" *Id.* (internal citations omitted). "Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *N. Shipping Funds I, LLC v. Icon Capital Corp.*, No. 12 Civ. 3584 (JCF), 2013 WL 1500333, at *9 (S.D.N.Y. Apr. 12, 2013) (quoting *Berman v. Sugo LLC*, 580 F. Supp. 2d 262, 267 (S.D.N.Y. 2010)); *see also Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 597 (S.D.N.Y. 2017) ("Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." (internal citations omitted)).

### B. Robins Fails to State a Claim Because It Fails to Plausibly Allege a Breach of the Contract by Defendants

Assuming, without deciding, that both Defendants assumed the rights and obligations pertaining to the Contract, the Court must dismiss Robins's Amended Complaint because it fails

---

[11] No party disputes the existence of the Contract or the Commercially Reasonable Efforts provision. The dispute surrounds how to interpret that provision and whether Teva Ltd. is a party to the Contract.

[12] Defendants do not claim that Robins failed to adequately perform under the Contract.

to plausibly allege that Defendants breached the Contract.[13] Specifically, Robins does not put forth facts sufficient to support its claim that Defendants did not use Commercially Reasonable Efforts to market Amrix. Robins's additional arguments suggesting that the issue of whether a party has undertaken Commercially Reasonable Efforts automatically survives a motion to dismiss and that the Amended Complaint should be permitted to proceed to discovery due to information asymmetry also fail.

The Contract between Robins and Anesta provides that if at any time from the commencement of the agreement until August 28, 2019—the Net Sales Milestone Termination Date—Anesta or its successor entities fail to use Commercially Reasonable Efforts in their marketing and sale of Amrix, that entity will be liable to Robins for half of the amount Robins would have received had the contract been fully executed. "Commercially Reasonable Efforts," as defined in the Contract means:

> [W]ith respect to any Person, the efforts and resources that would be used (including the promptness in which such efforts and resources would be applied) by such Person consistent with its normal business practices, which in no event shall be less than the level of efforts and resources standard in the pharmaceutical industry for a company similar in size and scope to such Person, with respect to a product at a similar stage in its development or product life taking into account efficiency, safety, commercial value, the competitiveness of alternative products of

---

[13] Because Robins's Amended Complaint plainly fails to survive this Rule 12(b)(6) challenge, the Court assumes for purposes of deciding this Rule 12(b)(6) challenge that it may exercise personal jurisdiction over Teva Ltd.

In challenging personal jurisdiction pursuant to Rule 12(b)(2), Teva Ltd. argues that it did not automatically assume all of Anesta's rights and obligations under the Contract when it purchased Anesta's parent company. Specifically, Teva Ltd. contends that the venue provision only applies to the *parties* to the contract—Robins and Anesta—and not necessarily to the parent companies involved. Thus, according to Teva Ltd., the choice-of-venue provision does not subject Teva Ltd. to personal jurisdiction for two reasons: (1) Teva Ltd. is not a party to the Contract; and, (2) Anesta's parent company continues to operate independently of Teva Ltd. as a wholly owned subsidiary. In contrast, Robins alleges "upon information and belief" that Teva is "bound by all of [Anesta's parent company's] obligations to Robins under the [Contract]." (Am. Compl. ¶ 17.) The Court need not decide that jurisdictional question today.

third parties that are in the marketplace or under development, and the Patent and other proprietary position of such product.

(Am. Compl. ¶ 13 (quoting Contract §4.02(c) (emphasis added in Am. Compl)).)

Under New York law, a plaintiff must plead plausible, comparative facts in support of a breach of contract claim where the plaintiff alleges a failure to use Commercially Reasonable Efforts. "When interpreting the meaning of a 'reasonable efforts' clause, 'New York courts use the term 'reasonable efforts' interchangeably with 'best efforts' . . . [and] a 'best efforts' clause imposes an obligation to act with good faith in light of one's own capabilities.'" *Soroof Trading Dev. Co. v. GE Fuel Cell Sys. LLC*, 842 F. Supp. 2d 502, 511 (S.D.N.Y. 2012) (quoting *Monex Fin. Servs. Ltd. v. Nova Info. Sys., Inc.*, 657 F. Supp. 2d 447, 454 (S.D.N.Y. 2009)).

Relevant here, the New York Court of Appeals has found that a plaintiff failed to state a plausible claim on a breach of a commercially reasonable efforts clause when it "fail[ed] to allege any commercially reasonable step that [defendant] should have taken." *JFK Holding Co. v. City of New York*, 21 N.Y.3d 722, 727 (N.Y. 2013); *see also Robert Wood Johnson Univ. Hosp. v. SMX Capital, Inc.*, No. 12cv7049, 2013 WL 4510005, at *4 (D.N.J. Aug. 26, 2013) (dismissing a complaint in part because "Plaintiff does not allege what commercially reasonable efforts or steps, if any, Defendant made or failed to make.")

Courts have dismissed cases which fail to allege those vital comparative facts.[14] For example, in *Soroof*, the plaintiff asserted that a defendant had failed to use "reasonable efforts to

---

[14] Robins asserts that a commercially reasonable effort clause poses a "fact-bound issue that cannot be decided on a 12(b)(6) motion" and must be submitted to the trier of fact. (Resp. Teva USA Mot. Dismiss 11, ECF No. 11.) The Court finds this contention unpersuasive. New York case law plainly supports the conclusion that a plaintiff must plead plausible facts in support of a breach of contract claim where the plaintiff alleges a failure to use Commercially Reasonable Efforts. *See JFK Holding*, 21 N.Y.3d 722 at 728; *Robert Wood Johnson*, 2013 WL 4510005, at *4.

supply" fuel cells under the terms of their contract. 842 F. Supp. 2d at 512. The *Soroof* court dismissed the claim, finding that the "[Plaintiff] provides no facts—such as specific instances of delay, facts regarding what efforts were lacking, or even allegations concerning [defendant's] capabilities and its failure to live up to them—to support these conclusory statements."[15] *Id.*

To infer that Teva's budget and effort reductions were not commercially reasonable, Robins's Amended Complaint would thus need, at a minimum, some factual allegations pertaining to "what commercially reasonable efforts or steps, if any, Defendant made or failed to make."[16] *Robert Wood Johnson*, 2013 WL 4510005, at *4. However, while Robins alleges that

---

[15] Robins attempts to differentiate *Soroof*, claiming that unlike the plaintiff in that case, it has made factual allegations that Teva "cut funding for marketing and sales of Amrix." (Resp. Teva USA Mot. Dismiss 15.) The fact that Teva cut its marketing budget does not meaningfully differentiate the case at bar from *Soroof*. Both cases evince an absence of allegations as to why the defendants' conduct fails to meet the baseline standard imposed by the contract, and in both cases numerous plausible alternative explanations exist outside of a lack of reasonable efforts.

[16] Robins urges the Court to construe the Amended Complaint more liberally due to information-asymmetry, arguing that "most of the evidence that Robins needs to flesh out these details [is] in Teva's exclusive possession." (Resp. Teva USA Mot. Dismiss 2). In support of this proposition, Robins cites only *Woods v. City of Greensboro*, a civil rights case in which the plaintiffs survived a motion to dismiss, in part, because "civil rights cases are more likely to suffer from information-asymmetry, pre-discovery." 855 F.3d 639, 652 (4th Cir. 2017). Because *Woods* is inapplicable to the case at bar, the Court dismisses this line of argument.

First, the plaintiffs in *Woods* sufficiently stated a claim. In particular, in support of their argument that the city acted in a discriminatory, pretextual manner when it cancelled a loan to their minority-owned business, they pled the "results of a disparity study demonstrating a pattern of the [c]ity almost exclusively lending to nonminority-owned businesses," facts suggesting that the city's official explanation for cancelling the loan was untrue, and a specific example of the city making a loan to a nonminority-owned business under the exact same circumstances. *Id.* at 648. The United States Court of Appeals for the Fourth Circuit found those detailed allegations "more than sufficient to . . . 'nudge [the plaintiffs'] claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Only then did the Fourth Circuit note an additional reason for its finding: that "civil rights cases are more likely to suffer from information-asymmetry." *Id.* at 652. Here, unlike the plaintiff in *Woods*, Robins fails to state a claim because it does not allege comparative facts concerning what actions a similarly situated company would have taken in Teva's place. Alleging that Teva cut its marketing budget and efforts relating to Amrix, without more, cannot survive a motion to dismiss.

10

Teva reduced its marketing budget and sales efforts with regard to Amrix, it never alleges *how* those changes meant Teva's efforts had dropped below those of a comparable "Person," as defined in the Contract. (Am. Compl. ¶ 13.) In other words, without any claim about what "efforts and resources" a company of "similar[] size and scope" would expend in marketing Amrix, the Court has no way of assessing whether Teva's actions were commercially reasonable or not. (*Id.*)

Robins's claim that Teva reduced its marketing budget and sales efforts with regard to Amrix, by itself, does not move the Amended Complaint "[a]cross the line between possibility and plausibility of entitlement to relief." *Francis*, 588 F.3d at 193. Companies often change their budgets and sales efforts for certain products to adapt to an ever-changing market-place. The Contract itself recognizes that Commercially Reasonable Efforts may vary based on the product's "stage in its development or product life taking into account efficiency, safety, commercial value, the competitiveness of alternative products . . . and the Patent and other proprietary position of such product." (Am. Compl. ¶ 13 (quoting Contract §4.02(c)).) Robins makes no allegation that a company similar in size and scope would not have made the same the reductions in its marketing budget given these factors. Without those comparative allegations, Robins can do no more than plead facts which are "merely consistent with . . . liability." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

---

Second, Robins presents a plaintiff far different than the civil rights plaintiffs in *Woods*. In that case, after finding that the Plaintiffs stated a claim, the Fourth Circuit grounded its analysis in the fact that civil rights cases were "vulnerable to premature dismissal because *civil rights plaintiffs* often plead facts that are consistent with both legal and illegal behavior, and *civil rights cases* are more likely to suffer from information-asymmetry." *Id.* (emphasis added). In other words, it is difficult for civil rights plaintiffs to show hard evidence of *pretext* at the pleading stage. The factual and legal posture of this case differs enough from *Woods* that it renders that case inapposite.

Disregarding Robins's legal conclusion that "at some point in 2016 or thereafter[,] [Teva] failed to use Commercially Reasonable Efforts with respect to the marketing and sale of Amrix," the Amended Complaint contains only one sentence in support of its breach of contract claim: that Teva "cut[] the marketing budget and efforts regarding the sale of Amrix." (Am. Compl. ¶ 24.) That allegation, without more, gives rise to no more than a possibility that Teva failed to use Commercially Reasonable Effort's and stands liable for the alleged breach. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). As such, the Amended Complaint fails to survive Rule 12(b)(6) scrutiny.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Teva USA Motion to Dismiss, and the Teva Ltd. Rule 12(b)(6) Motion to Dismiss. The Court will deny as moot Teva Ltd.'s Rule 12(b)(2) Motion to Dismiss, and dismiss without prejudice Robins's Amended Complaint. However, given the additional factual allegations contained in the response to the Motion to Dismiss, the Court will grant Robins leave to amend its complaint.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: September 18, 2019
Richmond, Virginia