UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

E. CLAIBORNE ROBINS COMPANY, INC.,

    Plaintiff,

v.

TEVA PHARMACEUTICAL INDUSTRIES, LTD., *et al*.

    Defendants.

Case No.   3:18-cv-827-DJN-EWH

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO PRESENT TESTIMONY OF ADDITIONAL EXPERT AT TRIAL

In support of its contemporaneously filed Motion for Leave to Present Testimony of Additional Expert, Plaintiff E. Claiborne Robins Co., Inc. ("Robins"), states as follows:

Rule 16 authorizes a trial court to convene parties for a pretrial conference to "improve[e] the quality of the trial." Fed. R. Civ. P. 16(a). During a pretrial conference, a trial court may—among other things—consider "limiting the use of testimony under Federal Rule of Evidence 702." Fed. R. Civ. P. 16(c)(2)(D). After the pretrial conference, "the court should issue an order reciting the action taken." Fed. R. Civ. P. 16(d). This order "controls the course of the action unless the court modifies it." *Id.*

In the present case, the Court convened a telephonic on-the-record status call on Monday, Nov. 8, 2021 ("Status Conference"). [ECF Minute Entry dated 11/9/21.] The topics under discussion during the Status Conference included the number of expert witnesses each party would be allowed to present at trial. The Court stated its intent to limit each side to one expert witness. The next day, the Court entered a Scheduling and Pretrial Order ("Order") setting trial

in this matter for the week of March 14, 2022. [ECF No. 179.] The Order states that "[t]he parties may rely upon the testimony of only one expert per topic, except by order of the Court." [Id. at 2.]

The main issue in the present case is whether or not Teva's drastic cuts in sales and marketing efforts for Amrix after 2016 violated Teva's obligation to undertake contractually defined "Commercially Reasonable Efforts" ("CRE") on Amrix's behalf at all times during the 12-year earn-out period ending in 2019. At trial, Plaintiff intends to present one expert witness on the topic of whether Teva's reduced efforts to sell Amrix fell short of the contractual CRE requirements.[1] The present motion seeks leave to present an additional expert witness to testify regarding : (1) the dire financial circumstances that Teva faced from mid-2016 onward, and (2) the close correlation between Amrix's performance in the market and Teva's spending on sales and marketing for Amrix.

This information is highly relevant. Under Rule 401, evidence is relevant if it tends to make a consequential fact more or less relevant. As noted above, the main consequential fact in the present case is whether Teva's efforts vis-à-vis Amrix fell below its contractual obligations. Robins intends to prove this by presenting, among other evidence, the testimony of a pharmaceutical-industry expert, who will show how Teva's efforts on Amrix's behalf fell below both: (1) the level of efforts Teva undertook for its other products and as part of its normal business activities, and (2) the level of efforts standard in the industry for a company similar to

---

[1] Robins has identified in its Rule 26 disclosure of expert testimony two expert witnesses that Robins may use at trial to present evidence, Julie McHugh and Peter Lankau. In accordance with the Court's direction at the Status Conference, Robins will present the testimony of only one of them.

Teva for a product with characteristics relevantly similar to Amrix, as identified in the Agreement at § 4.02(c).

This, however, leaves a gap in Robins' case: motive. Robins contends that Amrix was a valuable product that, with adequate support, would have generated tens of millions of dollars in profit between 2016 and 2019. But Teva, too, had an interest in maximizing profits from the drugs in its portfolio. So it may puzzle the jury why Teva would essentially abandon Amrix rather than market and sell the product to its fullest. What was Teva's motive for reducing its support of Amrix to sub-optimal levels?

Teva took these actions because it was facing a liquidity crisis brought on by (1) litigation settlements, (2) reductions in the value of the generics side of Teva's business, and (3) its assumption of $27 billion in debt to purchase Actavis Generics from Allergan PLC. To explain these issues to the jury, Robins has identified Guy Davis, a forensic accountant with extensive experience in analyzing distressed companies, to explain how these events caused Teva to suffer a liquidity crisis that nearly bankrupted the company.[2] More importantly, Davis will explain how a liquidity crisis led Teva to take actions that, on their face, seem to be irrational and not normal business practices, e.g., selling off assets at fire-sale prices, laying off productive employees, and abandoning support for otherwise profitable products. This evidence will buttress Robins' arguments and evidence that Teva's actions fell below contractual requirements. That Teva had strong financial reasons to shortchange Amrix makes it more likely that it did so.

---

[2] A redacted copy of Davis's expert report is attached hereto as **Exhibit 1**. The substance of Davis's report involves information that Defendants have designated as Highly Confidential: Attorneys' Eyes Only pursuant to the Confidentiality Order entered in this action [ECF No. 102]. Robins will file an unredacted copy under seal pursuant to Local Rule 5.

Davis's explanations will help the jury understand why Teva took the counterintuitive step of essentially abandoning Amrix, a product that had been generating nearly $40 million in annual profits for Teva before 2016. Whether a company is in distress based on an analysis of its financial circumstances and the remedial actions large distressed companies take are not within the ordinary experience of the average juror. Davis's testimony will help the jury understand why Teva did what it did. Davis also will use his forensic-accounting skills to analyze the close correlation between Amrix marketing efforts and Amrix net sales. The high correlation between the two illustrates Amrix's promotional sensitivity and shows why the product needed ongoing support to maintain its profitability. Davis's analysis of this issue will help the jury understand the importance of strong promotional efforts for a product like Amrix.

There will be little or no overlap between Davis's testimony and the testimony of Robins' CRE expert. The two will address different questions. The CRE expert will explain to the jury *what* Teva did and *how* its actions fell below contractual requirements. Davis, on the other hand, will explain to the jury *why* Teva did what it did. The testimony will be complementary, not duplicative.

Because Guy Davis's testimony is relevant to Robins' claims and will help the jury understand the facts and issues in this case, Robins respectfully requests leave to present his testimony as Robins' second expert witness.

Dated: November 22, 2021	E. CLAIBORNE ROBINS COMPANY, INC.

By       /s/      
          Counsel

Thomas M. Wolf (VSB No. 18234)
Joseph M. Rainsbury (VSB No. 45782)
John "Jack" M. Robb, III (VSB No. 73365)
Kenneth T. Stout (VSB No. 88027)

4

Jason F. Goldsmith (VSB No. 95264)
MILES & STOCKBRIDGE P.C.
919 E. Main Street, Suite 1302
Richmond, Virginia 23219
804.905.6910 (Telephone)
804.905.6910 (Facsimile)
twolf@milesstockbridge.com
jrainsbury@milesstockbridge.com
jrobb@milesstockbridge.com
ktstout@milesstockbridge.com
jgoldsmith@milesstockbridge.com

James A. Sullivan, Jr. (admitted *pro hac vice*)
Matthew M. May (admitted *pro hac vice*)
MILES & STOCKBRIDGE P.C.
11 North Washington Street, Suite 700
Rockville, Maryland 20850
301.762.1600 (Telephone)
301.762.0363 (Facsimile)
jsulliva@milesstockbridge.com
mmay@milesstockbridge.com

*Counsel for E. Claiborne Robins Co., Inc.*